**DELANEY REALTY, INC., Appellant,**

v.

**Richard OZUNA and wife, Trinidad Ozuna, Appellees.**

**No. 6881.**

Court of Civil Appeals of Texas, El Paso.

Jan. 9, 1980.

Rehearing Denied Feb. 6, 1980.

Kim I. Manning, Robert D. Reed, San Antonio, for appellant.

Robert I. Kahn, Law Offices of Taylor, P. C., Ray Taylor, Phillip R. Spicer, Jr., San Antonio, for appellees.

OPINION

PRESLAR, Chief Justice.

Purchasers of a home brought this action against the seller and the real estate agent involved, alleging violations of the Deceptive Trade Practices—Consumer Protection Act in failing to tell them that the home was subject to being flooded. Based on jury verdict, judgment· was rendered for the home buyers against both the seller and the real estate agent. Only the real estate agent appeals. We reverse and render.

Appellees purchased the house and lot in question from Gene and Ann Carlis. Ap-

pellant, Delaney Realty, Inc., acted as broker or real estate agent in the transaction. Within the year and a half between the time of purchase and the bringing of this suit, the house was subjected to flooding several times. Appellees then brought this suit under the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.Code Ann. Sections 17.41 through 17.50. The Appellees located the house in a real estate listing and contacted Appellant about it. They purchased it from the owners, the Defendants Carlis, with Appellant acting as the realtor. They brought this suit against the owners on allegations that the Carlises knew the property was subject to flooding and misrepresented that fact to the Appellees, and that such was a deceptive trade practice act; the case against the Appellant was based on allegations that it knew or should have known of the flooding conditions and failed to notify Appellees of that fact, and that was a deceptive trade practice act. Based on a jury verdict, judgment was rendered for Appellees against the Defendants Carlis and Appellant, jointly, for treble damages in the sum of $25,293.00 plus attorney fees for trial and appeal. The Carlises do not appeal.

Appellant's first point of error is that the trial Court erred in overruling its Motion for Judgment Non Obstante Veredicto and in rendering judgment for Appellees for the reason that Appellees were not "consumers," as such term is defined in the Act. In connection with our consideration of this point, it should be noted at the outset that this is not an agency case or respondeat superior situation as the case was pled and tried. There is no pleading or finding as to agency; to the contrary, each Defendant was sued under separate allegations for violating the Deceptive Trade Practices Act. This, then, is a direct action against the real estate agent by the purchaser of realty solely under the terms and provisions of the Deceptive Trade Practices Act.

In the following cases, it is held, either directly or by implication, that one must be a "consumer" as defined by Section 17.45(4) of the Act in order to bring suit under it. *Bourland v. State*, 528 S.W.2d 350 (Tex.Civ.

App.—Austin 1975, writ ref'd n. r. e.); *Russell v. Hartford Casualty Insurance Company*, 548 S.W.2d 737 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Thompson v. First Austin Company*, 572 S.W.2d 80 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n. r. e.); *Exxon Corporation v. Dunn*, 581 S.W.2d 500 (Tex.Civ.App.—Dallas 1979, no writ); *Hall v. Bean*, 582 S.W.2d 263 (Tex.Civ.App.—Beaumont 1979, no writ); *Joe Oil Aromatics, Inc. v. Commercial Fuel Oil Company, Inc.*, 564 S.W.2d 490 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Cape Conroe Limited v. Specht*, 525 S.W.2d 215 (Tex.Civ.App.—Houston [14th Dist.] 1975), overruled on other grounds, *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977).

This case arose after the 1975 amendments of the Act, but prior to the effective date, May 23, 1977, of the amendments. The Act at that time provided:

Section 17.50. Relief for Consumers

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

.  .  .  .  .

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) Three times the amount of actual damages  .  .  .

Section 17.45. Definitions

As used in this subchapter:

.  .  .  .  .

(2) "Services" means work, labor, or service purchased or leased for use, for other than commercial or business use [after leased therefrom], including services furnished in connection with the sale or repair of goods.

.  .  .  .  .

(4) "Consumer" means an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services.

In *Russell v. Hartford Casualty Insurance Company*, supra, the plaintiffs were involved in an automobile accident; their insurer furnished them with a rental car for seven days and then cancelled the agree-

ment. Plaintiffs sued Hartford under the DTPA. The Court held that the plaintiffs in that case were not consumers because they did not purchase or lease anything.

In *Thompson v. First Austin Company*, supra, a take nothing summary judgment was upheld where the borrowers sought recovery from their lender under the Act as a result of the lender's alleged failure to comply with a letter to the borrowers, promising not to foreclose a deed of trust lien against their home, since the borrowers were not "consumers" under the Act because they had not purchased services from the lender but had purchased the use of money with their note and deed of trust.

In *Exxon Corporation v. Dunn*, supra, where Dunn sought recovery under the Act for work done on his automobile air conditioner, the Court denied recovery, holding that he was not a consumer because he was not charged for and did not pay for the work done.

In *Hi-line Electric Company v. Travelers Insurance Companies*, 587 S.W.2d 488 (Tex. Civ.App.—Dallas 1979, no writ), a motorist brought an action against an insurer under the Act in connection with the purchase of services and leasing of goods from third parties in reliance on the alleged misrepresentation of the adjuster of the insurer. The Court noted that a consumer must seek or acquire goods or services from the person he is suing, saying: "Although the plaintiff and defendant need not be in privity or in a contractual relationship, a consumer must seek or acquire goods or services furnished by defendant." It was then held that the plaintiff was not a consumer because the alleged misrepresentations were not made in connection with any actual or prospective sale or lease in which the plaintiff was seeking or acquiring goods or services supplied by the defendant.

In *Joc Oil Aromatics, Inc. v. Commercial Fuel Oil Company, Inc.*, supra, the Court denied venue under the Act on the basis that the burden rests on the plaintiff to show the applicability of the Act and, thus, that it is a consumer who has been adversely affected by one of the acts and the proof failed because the plaintiff failed to show that it purchased goods from Joc Oil or that it had purchased services.

In *Hall v. Bean*, supra, an action was brought to recover a prize offered to the winner of a boat race because the defendant breached an agreement by refusing to give plaintiffs the advertised prize, substituting a lesser prize. Based on a jury verdict, the trial court entered judgment for treble damages. The Court of Civil Appeals reduced the treble damages to the actual damages. The jury charge defined "consumer" as "[a]n individual who seeks or acquires by purchase or lease any goods or services." The Appeals Court, noting that "purchase" is not defined in the Act, then looked to Black's Law Dictionary (4th Ed. Rev. 1968) for a definition of purchase as the "[t]ransmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration." In the opinion, Justice Keith said that "[i]t is apparent that plaintiffs did not 'purchase' the prize which they sought—no valuable consideration passed between plaintiffs and defendant." It was held, then, that the plaintiffs could not be classified as "consumers," and consequently cannot recover treble damages or attorney fees as provided by the DPTA.

In the case before us, there is no contention but that the Carlises were the sellers of the house and the Appellees were the purchasers. Their contract as such parties in such capacities is in evidence and it names Appellant, Delaney Realty, as escrow agent of the earnest money deposited and as broker, and, as to who pays the broker, it recites:

BROKERS FEE: ___Century 21 DeLaney__ Broker (6%)___ Co-Broker _____ (___%), as Real Estate Broker ('Broker') has negotiated this sale and Seller agrees to pay Broker in _____ County, Texas, a total cash fee of __six percent__ of the Sales Price at closing or on Seller's default if closing is prevented by fault of Seller.

In this action, the buyer has now recovered treble damages and attorney fees un-

der the Deceptive Trade Practices Act against his vendor and a third party to the transaction, the realtor. Is he a "consumer" as to the real estate broker within the meaning of the Act and as construed by the courts? Appellees purchased the property from its owner, the Carlises, not from Appellant. They paid nothing to Appellant for the goods so purchased; they argue that they purchased the "services" of Appellant, but the proof is they paid nothing for those services. Also, their suit as pled and tried is not one for recovery on services rendered, but for the inferior quality of the goods acquired; their judgment against Appellant is based on the diminished value of the home, with a small recovery for mental anguish arising from such property damage.

▇▇▇▇ The above cases have been set out with more than usual detail because of the holding of the Supreme Court in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977). In that case, the purchasers of a home brought an action against the builders/sellers, alleging a defective sewer system and that false statements about its repair constituted a violation of the Deceptive Trade Practices—Consumer Protection Act. The amendment of the Act to include real estate became effective after the purchase of the property, but the Court found the Act applicable because of the promise to repair, and the misrepresentation that the defects to the sewer had been corrected. (This is the case in which the Supreme Court declared that treble damages were mandatory under the Act, but our concern with the case is the Court's construction of the case as to who may recover under it.) The Court noted that, to resolve the issues on the appeal, the Court must interpret the Consumer Protection Act. It then stated: "The next issue is whether, with respect to the particular practice in this case, Jackie and Cheryl Woods are 'consumers' within the meaning of the Consumer Protection Act and are therefore entitled to the remedies explicitly provided by that Act for 'consumers.'" The Court then discussed at some length the statutory definition of a consumer and the statutory definition of "services," it reviewed the evidence, and

concluded that the plaintiffs were in fact consumers, saying: "Accordingly, as purchasers of 'services,' Jackie and Cheryl Woods are 'consumers' within the meaning of the Consumer Protection Act." In a footnote to the opinion, the Court then said: "The issue of whether a person who is not a 'consumer' has a cause of action under the Act is therefore not reached." We know not what weight to give to a footnote, as distinguished from language in an opinion, but, in its opinion, the Court said that an issue was whether the plaintiffs are consumers within the meaning of the Act and "are therefore entitled to the remedies explicitly provided by that Act for 'consumers.'" From the language of that opinion, and from the no reversible error designation given the other cases discussed above, we conclude that a plaintiff bringing an action under the Act must prove, as part of his case, that he is in fact a "consumer." This would follow hornbook law that one must recover, if at all, on the cause of action pleaded.

In the case before us, there has been no finding, either by the Court or jury, that the Appellees are consumers. Accordingly, the judgment of the trial Court as to Appellant is reversed and judgment is here rendered that Appellees recover nothing as to it.

OSBORN, Justice, concurring.

When the purpose and intent of the Deceptive Trade Practices—Consumer Protection Act is considered, it seems obvious that one of the largest "service" groups in the State, real estate agents, should be included within those subject to the provisions of the Act. That certainly is evident from the fact that the Legislature amended the Act to include "real property purchased or leased for use" within the definition of "goods" following the holding in *Cape Conroe Limited v. Specht*, 525 S.W.2d 215 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ), which held that the original definition of goods as "tangible chattels bought for use" did not include real estate transactions. See: Bragg, Maxwell & Longley,

Texas Consumer Litigation Sec. 2.01 at 30 (1978). But, in this case, the Appellee did not purchase the real property in question from the Appellant. The purchase was from the owners, Gene and Ann Carlis.

Certainly, the Appellant did furnish a "service" in the sale of this property. But, the Appellees did not "purchase or lease" such service. The Act defines "Services" to mean "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." As noted in the Chief Justice's opinion, the earnest money contract required the sellers, Gene and Ann Carlis, to pay the real estate commission and the evidence reflects that they alone paid such commission. Thus, for the reasons set forth in all those cases cited in Chief Justice Preslar's opinion, the Appellees are not consumers of any goods or services which they purchased from the Appellant.

I would suggest a need to again amend the Act to provide protection for a consumer where the one who provides the service has been paid therefor, even though the consumer did not purchase or pay for such service.

WARD, Justice, concurring.

I agree that the judgment of the trial Court should be reversed, and believe that judgment should be rendered that the Appellees take nothing. However, I believe that a real estate agent in a transaction such as the one before us is covered by the Deceptive Trade Practice Act. The Plaintiffs were certainly consumers of both goods and services. The fact that they bought the "goods" from the real estate owners and did not directly pay the real estate agent for his services should not matter. The Act does not define who a consumer can sue, but merely says anyone is a consumer who seeks or acquires by purchase or lease any goods or services. Tex. Bus. & Comm.Code Ann. Section 17.45(4). A liberal construction is mandated to protect the consumer. Section 17.44. Even if the Appellees discovered the home through a multiple listing service and did not retain Appellant in any way to represent them in the sale of the home and did not pay for the Appellant's services, they can still maintain the action against the seller's agent if that agent was otherwise culpable under the Act. Section 17.45(2) includes "services furnished in connection with the sale or repair of goods." The real estate agent is too closely connected with the sale, and I would overrule the Appellant's first two points.

It was the Appellees' position that the Appellant owed them a separate duty by virtue of the Texas Real Estate License Act. Article 6573a, Tex.Rev.Civ.Stat.Ann. While Appellees fail to point out to what part of the statute they are referring, the statute does provide that the Texas Real Estate Commission may revoke a real estate license when it has been determined under Section 15(4)(A) that the licensee has made a material misrepresentation or has failed to disclose to a potential purchaser any latent structural defect "or any other defect known to the broker or salesman. Latent structural defects and other defects do not refer to trivial or insignificant defects but refer to those defects that would be a significant factor to a reasonable and prudent purchaser in making a decision to purchase; . . ." This subsection relates to failure to disclose known defects. Also of significance to the present case is paragraph (4)(W) of Section 15 which condemns one "acting negligently or incompetently in performing an act for which a person is required to hold a real estate license."

The trial Court apparently had in mind these two subsections since it charged the jury on the meaning of negligence by the standard definition, and further charged the jury as follows:

> You are hereby instructed that a real estate broker has a duty to disclose to a protective purchaser any known defects in property listed with him for sale and that he further is prohibited by law from acting negligently or incompetently in performing an act for which a person is required to hold a real estate license.

By special Issue No. 6, the jury determined that Delaney Realty, Inc. "knew or should have known that said home sold to

the Ozunas in 1977 was so subject to flooding." By special Issue No. 7, the jury found that the failure of Delaney Realty, Inc. to so notify the Ozunas of such flooding was a deceptive act or practice of Delaney Realty, Inc.

By various points, the Appellant makes the complaint that there was no evidence to show that the Appellant knew that the home was subject to flooding, and to this extent I would sustain that contention. This would leave the Appellees in the position of having proved only that the Appellant should have known that the house sold was so subject to flooding. This case would then present somewhat the similar problem as was before the Dallas Court of Civil Appeals in *Singleton v. Pennington*, 568 S.W.2d 367 (Tex.Civ.App.—Dallas 1978, writ filed). That Court was faced with the question whether the Deceptive Trade Practices Act imposed liability for an innocent representation made by the defendant when he stated that a boat and motor which he had earlier purchased was in excellent condition. The statement was false because the gear housing of the motor had been cracked and improperly repaired. The defendant did not know that the statement was false, and did not make the statement recklessly because he had not experienced any difficulty with the motor after it had been repaired. There, the Court, among other things, compared the general provision of Section 17.46(a) with the specific provisions of the "laundry list" contained in Section 17.46(b) and concluded, among other things, that all of Section 17.46 excluded from the penalties of the Act any "false, misleading or deceptive" statements concerning the need for repair service unless such statements were made knowingly. The Court in effect held that since the specific misrepresentation of the defendant made without knowledge of its falsity would not violate Section 17.46(b)(13) of the Act, then the element of intent could not be avoided by resort to the general prohibition of Section 17.46(a). See: Bragg, Maxwell & Longley, Texas Consumer Litigation Sec. 2.11, discussion at 52 (1978).

I would apply the same reasoning to the use of the Real Estate License Act which has been resorted to here as a means of coming within the general prohibition of Section 17.46(a) of the Deceptive Trade Practices Act. Since Section 15(4)(A) of the Real Estate License Act specifically condemns the failure to disclose to a potential purchaser defects that are known to the broker or salesman, the requirement that the defect be known cannot be avoided, in a failure to disclose situation, by resort to the general prohibition of Section 15(4)(W), which generally condemns the broker or salesman from acting negligently or incompetently in performing an act for which a person is required to hold a real estate license. In other words, I would hold that it was the intent of the Legislature that the plaintiff be required to prove an intentional or known deception where a failure to disclose is the complaint. Since there was no proof that the defect regarding flooding was known, I would hold that the alleged violation of the Real Estate License Act could not be resorted to in an effort to sustain a violation of Section 17.46(a) of the Deceptive Trade Practices Act. The problem presented is in regard to the Act as it existed before the Legislative amendments of 1979.

For the reasons stated, I would reverse the judgment of the trial Court and render judgment here for the Appellant.