Don BORMASTER, Appellant,

v.

Gary L. HENDERSON and Pet Shop and Bird Clinic, Appellee.

No. C2656.

Court of Appeals of Texas, Houston, (14th Dist.).

Oct. 15, 1981.

Susan D. Steinfink, Richie & Greenberg, Houston, for appellant.

Michael V. Grover, Houston, for appellee.

Before MILLER, PAUL PRESSLER and MORSE, JJ.

MILLER, Justice.

This appeal arises out of a suit brought under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), Tex.Bus. & Comm.Code Ann. § 17.41, et seq. (Supp. 1980) and for breach of expressed and implied warranties under Tex.Bus. & Comm. Code Ann. §§ 2.313, 2.314 (Vernon 1968). Trial was before the court without jury, and a take nothing judgment was entered against the appellant. The trial court found appellant failed to prove by a preponderance of the evidence that the appellees committed any false, misleading or deceptive acts, or breached any expressed or implied warranties. Appellant perfected this appeal. This court finds no error in the action of the trial court, and we affirm its judgment.

Appellee Pet Shop and Bird Clinic (Pet Shop) is a local business involved in the retail sale and post-sale care of exotic animals and birds. Appellee Gary L. Henderson is the president of the Pet Shop and served as the salesman for the purchase which is the basis of this suit. On April 8, 1978, appellant Don Bormaster purchased an umbrella cockatoo from the appellees for $895.00. Prior to purchase, Henderson stated the cockatoo was healthy and gave the appellant an "Official Health Certificate for Animals and Fowl." The certificate contained a 72-hour expressed warranty on the health of the cockatoo, to be effective only after a veterinarian examination prior to purchase. Appellant purchased the cockatoo without a prior medical examination by the Pet Shop's veterinarian. Two days later, however, appellant took the cockatoo to a veterinarian of his choice, Dr. Soifer, who after a brief examination stated the cockatoo was in good health.

Two weeks later the cockatoo began showing signs of poor health. The appellant telephoned the Pet Shop, which suggested he take the cockatoo to a veterinarian. The appellant took the cockatoo back to Dr. Soifer, who conducted tests and prescribed medication for psittacosis, a disease common in domestic birds at that time. The cockatoo, however, failed to improve as a result of the medication. On April 28, appellant returned the cockatoo to the Pet Shop for treatment, where it died two days later. The cockatoo's carcass was sent to Dr. James Grimes, a professor of veterinary microbiology at Texas A&M University, for a post-mortem examination. After conducting an autopsy, Dr. Grimes concluded the cockatoo died of filariasis, an infection/infestation caused by the existence of microfilariae parasites in the bird. Dr. Grimes was also of the opinion the cockatoo was infected with microfilariae on April 8, the date of purchase, because of the magnitude of the filariae infestation at the time of death. Based upon this testimony, appellant claimed the cockatoo was defective and unmerchantable at the time of purchase, and therefore, the appellees violated the DTPA and breached expressed and implied warranties.

Appellant raises seven points of error on appeal, which can be simplified into four points. First, appellant claims the trial court's finding the appellant did not prove the cockatoo's death by a preponderance of the evidence goes against the great weight and preponderance of the evidence presented at trial. Second, the trial court's finding of fact and conclusion the appellees' acts did not violate the DTPA is without support

**658**

in the evidence and is against the great weight and preponderance of the evidence. Third, the trial court's finding of fact and conclusion the appellees did not breach any expressed warranties is without support in the evidence and is against the great weight and preponderance of the evidence. Fourth, the trial court's finding of fact and conclusion the appellees did not breach any implied warranties is without support in the evidence and is against the great weight and preponderance of the evidence. We will address these points in this order.

■ Appellant's first point raises a factual insufficiency claim. Appellant asserts the trial court's finding he failed to prove the cause of death of the cockatoo by a preponderance of the evidence is contrary to the great weight and preponderance of the evidence. The rule of law this court must follow in reviewing factual insufficiency errors is clear: this court is to consider all of the evidence in the record, both the evidence tending to prove the existence of a vital fact and the evidence tending to disprove its existence. If, after considering all of the evidence, this court concludes the trial court's decision is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, it must sustain the point and remand the case for a new trial. If, however, the evidence does not lead to this conclusion, the point is overruled and the trial court's judgment must be affirmed. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); see: Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 367–368 (1960).

■ The issue underlying this first point, and running through all of the points on appeal, is whether sufficient evidence was presented at trial to support the court's finding appellant failed to prove by a preponderance of the evidence a preexisting defective condition or breach of warranty in the sale of the cockatoo. Stated more succinctly, the question is whether appellant presented such unrebuttable medical expert testimony of the cause of disease and death of his cockatoo so as to prove his DTPA and

breach of warranties case by a preponderance of the evidence. After reviewing all of the evidence in the record, we are of the opinion the trial court had sufficient rebuttal expert medical testimony upon which to hold appellant did not prove his case. Since sufficient evidence exists to support the trial court's finding, we hold the trial court was not in error in entering a take nothing judgment against appellant.

Four medical experts testified at trial; Doctors Grimes and Soifer for the appellant and Doctors Buck and Ewert for the appellees. Appellant's claim the cockatoo was diseased at the time of purchase and the disease was the cockatoo's cause of death (and, therefore, the condition of the cockatoo was defective and in breach of warranties) is based on the deposition testimony of Dr. Grimes. As referred to earlier, Dr. Grimes testified to a reasonable medical probability that the cockatoo died of filariasis infestation caused by microfilariae and most probably the cockatoo was infected when purchased by appellant. Upon this testimony the appellant built his claim the cockatoo was defective and unmerchantable at the time of purchase. The testimony of the appellant's other expert, Dr. Soifer, was basically inconclusive. Dr. Soifer testified his examination of the cockatoo at the time of purchase did not include a blood test for microfilariae, so the existence of filariasis would have been undetected.

The appellees produced two medical experts to rebut the appellant's evidence. Dr. Edith Buck, a professor of parasitology and medical entomology, disagreed with the testimony of Dr. Grimes in two areas. Dr. Buck questioned the validity of Dr. Grimes' autopsy of the cockatoo, stating the examination procedures employed by Dr. Grimes could not have determined the cockatoo's cause of death. Dr. Buck also questioned the conclusion that microfilariae could cause death under these circumstances. She testified that in her opinion, microfilariae are harmless parasites and are only dangerous to their host when brought under outside stimulation. Therefore, it was not valid to state the microfilariae killed the

cockatoo. Dr. Adam Ewert, a parasitologist specializing in the study of filariasis, supported the testimony of Dr. Buck that microfilariae are not pathogenic.

Appellant raises three objections concerning the testimony of appellees' medical experts. First, appellant claims Dr. Buck and Dr. Ewert were not qualified to testify as experts because neither were veterinarians or pathologists, nor had they examined the cockatoo. Second, appellant asserts the testimony of Doctors Buck and Ewert was not adequate to rebut Dr. Grimes because it was not based on a "reasonable medical probability." *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703 (Tex.1970). Third, appellant claims the trial court erred in not relying on the better and more complete testimony, which was that of Dr. Grimes. We do not agree.

■ The qualifications and credibility of witnesses are matters to be evaluated by the fact finder. *Great American Insurance Co. v. Murray,* 437 S.W.2d 264 (Tex.1969). In a nonjury trial the judge is the trier of fact and it is his prerogative and responsibility to weigh the credibility and the proof of the evidence. *Ruth v. Imperial Ins. Co.,* 579 S.W.2d 523, 525 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). Appellant's contention Dr. Buck and Dr. Ewert were not qualified to testify as to the cockatoo's possible cause of death was a matter the trial judge was most suited to decide. Appellant is correct in asserting a fact finder should take into consideration a medical expert's training, skill and experience and his manner and attitude in testifying. See: *State Reserve Life Ins. Co. v. Ives,* 535 S.W.2d 400, 405 (Tex.Civ.App.—Fort Worth 1976, no writ). The trial judge heard the qualifications of appellees' experts (Dr. Buck: a microbiologist/parasitologist with 30 years experience; and Dr. Ewert: a microbiologist/parasitologist with 15 years study of filariasis), and over appellant's counsel's objection permitted them to testify and express opinions. While appellees' experts are not veterinarians, their testimony was restricted to the characteristics of microfilariae, an area within their expertise as parasitologists.

■ Furthermore, this court does not read *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703 (Tex.1970), as requiring appellees' rebuttal expert medical testimony be based on a reasonable medical probability. *Lenger* required that before there can be a finding of ultimate fact the proof must establish a causal connection beyond the point of conjecture. The *ultimate finding* must rest on at least a reasonable (medical) probability. *Id.* at 706. The Supreme Court was addressing in *Lenger* the burden that would warrant submission of the issue to the fact finder, not the standard for expert rebuttal testimony or for medical testimony in general. In fact, the Court went on to hold that fact finders are not limited to only considering expert testimony of a reasonable medical probability in coming to a conclusion. *Id.* Therefore, the trial court did not err by considering the appellees' rebuttal expert testimony. Dr. Grimes' testimony was not necessarily the most complete or depicted medical opinion given at trial, and it was contradicted by qualified medical testimony. The opinion testimony of an expert witness, even if not contradicted by an opposing expert, is generally not binding upon the trier of facts if more than one possible conclusion can be drawn from the facts. *Gregory v. Texas Employers Ins. Ass'n,* 530 S.W.2d 105 (Tex.1975). This court concludes the trial court had sufficient rebuttal evidence upon which to hold appellant failed to prove the cockatoo's death by a preponderance of the evidence. This point of error is overruled.

■ The remainder of appellant's points of error raise no evidence and insufficient evidence (against the greater weight and preponderance of the evidence) claims. In considering no evidence points of error, this court is to consider only the evidence and inferences tending to support the finding and conclusions of the trial court and is to disregard all evidence and inferences to the contrary. *Butler v. Hanson,* 455 S.W.2d 942 (Tex.1970); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). If that evidence is so weak as

to do no more than create a mere surmise or suspicion of the existence of the vital facts, then the trial court's judgment must be reversed. Otherwise, sufficient evidence exists, and the trial court's judgment must be affirmed. *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); see Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960). This court's role in insufficient evidence claims has already been stated.

Appellant claims in this second point of error the trial court's finding the appellees did not violate the Deceptive Trade Practices—Consumer Protection Act is without support in the evidence and against the great weight and preponderance of the evidence. Appellant asserts the appellees misrepresented the quality of the cockatoo at the time of purchase by stating the bird was healthy, when in fact the bird was diseased and of defective quality. Appellant further asserts those misrepresentations of health induced his purchase of the cockatoo, and he was damaged as a result.

The requirement for proving a DTPA case are found under § 17.50 of the Tex.Bus. & Comm.Code. First, the petitioner of the action must be a consumer. *Delaney Realty, Inc. v. Ozuna*, 593 S.W.2d 797 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). Section 17.45(4) of the Act defines a consumer as "an individual, partnership or corporation who seeks or acquires by purchase or lease, any goods or services." Goods are defined as "tangible chattels or real property purchased or leased for use." *Id.* § 17.45(1). Second, a claim under the DTPA is actionable where there have been false, misleading or deceptive acts enumerated in the "laundry-list" of § 17.46(b). Finally, the false, misleading or deceptive act must constitute a producing cause of damages. The DTPA requires actual damages be incurred before there can be recovery under the Act. *Reiger v. DeWylf*, 566 S.W.2d 47 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

It is clear the appellant was a consumer under the definitions of the DTPA, and the cockatoo was a tangible chattel within the meaning of the Act. It is not clear, however, that a false, misleading or deceptive act occurred which constituted a producing cause of the damage. Sufficient evidence was presented at trial through the testimony of Doctors Buck and Ewert whereby the trial court could have concluded there were no misrepresentations as to the cockatoo's particular standard, quality or grade. In that the appellant failed to conclusively show by a preponderance of the evidence the cause of death of the cockatoo, he failed to meet his burden of showing a defective condition at the time of purchase. This being the case, the trial court was correct in holding a DTPA action was not met. There was evidence as a matter of law to support this holding and such evidence was sufficient so as to not be against the great weight and preponderance of the evidence. This point of error is overruled.

Appellant next raises a no evidence and insufficient evidence point of error on a breach of expressed warranty claim. Appellant claims the trial court erred in holding appellees did not breach any expressed warranties in the purchase of the cockatoo, and that such holding is without support in the evidence and against the great weight and preponderance of the evidence. Appellant points to two separate representations by the appellees as amounting to expressed warranties: the written "Official Health Certificate for Animals and Fowl" and appellee Henderson's oral statements that the cockatoo was "healthy." Appellant asserts he relied on these expressed warranties and was damaged as a result.

The law with respect to expressed warranties is found in § 2.313 of the Tex.Bus. & Comm.Code. An expressed warranty is created when a seller makes an affirmation of fact or a promise to the buyer which relates to the goods sold and warrants a conformity to the affirmation as promised. For there to be a breach of the warranties action in this case, appellant had the burden to prove the goods were in disconformity with the promises made at the time of purchase, e.g., the appellant had to

prove the bird was not healthy at the time of purchase. *Id.* The trial court found appellant did not prove by a preponderance of the evidence a cause of death of the cockatoo, or a diseased condition at the time of purchase. This being the case, there was no showing of a breach of the expressed warranties. We hold there was evidence as a matter of law to support the trial court's conclusion and that such evidence was sufficient so as to not be against the great weight and preponderance of the evidence. This point is overruled.

 Appellant's final point of error suffers from the same infirmity. Appellant finally claims the trial court's finding and conclusion of no breach of an implied warranty of merchantability under § 2.314 Tex. Bus. & Comm.Code is without support in the evidence and against the great weight and preponderance of the evidence. Appellant asserts appellee Henderson was a merchant and impliedly warranted the bird was merchantable. Once again, however, appellant failed to prove by a preponderance of the evidence the cockatoo was diseased at the time of purchase or its cause of death. Therefore, appellant failed to prove any implied warranty of merchantability was breached. The trial court had sufficient evidence upon which to hold appellant failed to prove his case. Since there was evidence as a matter of law to support the trial court's conclusion and the evidence was sufficient so as to not be against the great weight and preponderance of the evidence, this point of error is overruled.

As all points of error are overruled, the judgment of the trial court is affirmed.