David Wilson McCREA, Appellant,

v.

CUBILLA CONDOMINIUM CORPORA-
TION N.V. and Fidinam (U.S.A.),
Inc., Appellees.

No. 01–84–0250–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 24, 1985.
Rehearing Denied Feb. 21, 1985.

Karen A. Lerner, Michael R. Charlton, Houston, for appellant.

Jim Flegle, Barbara E. Gardner, Bracewell & Patterson, Houston, for appellees.

Before JACK SMITH, BASS and LEVY, JJ.

## OPINION

BASS, Justice.

The appellant, David McCrea, brought suit against appellees, Cubilla Condominium Corporation and Fidinam (U.S.A.) Inc., under the Texas Deceptive Trade Practices Act (DTPA) and under contract law for alleged defects in a condominium. The original trial court entered a partial summary judgment on claims arising from the contract and as to express and implied warranties, and ordered a trial on all claims arising under the DTPA. The suit was later transferred to another court which held a non-jury trial on the misrepresentation claims brought under the DTPA. That court found that there were no material misrepresentations by the seller and entered a take nothing judgment.

We affirm in part and reverse and remand in part.

The appellant, McCrea, claims that the original court erred in granting a summary judgment on the issues of express and implied warranties. He also claims that the court erred in holding that a misrepresentation, under the DTPA, had to be material. Further, he claims that if, in the alternative, the misrepresentations are required to be of a material fact, then the court's holding that there were no material misrepresentations is against the great weight and preponderance of the evidence or is established by the evidence as a matter of law.

McCrea entered into an earnest money contract with the appellee, Cubilla, to purchase a condominium that had been converted from an apartment. The contract contained a disclaimer of all warranties, express or implied, and further provided that no representations, claims, or statements made by the seller would be binding unless they were set forth in the purchase agreement or in a subsequent written agreement executed by the seller. Two months after the parties entered into the contract, Cubilla sent a letter to McCrea stating that it would correct all defects in the unit caused by defective materials or faulty workmanship on items defined in "Schedule A" (i.e., washer, dryer, and fireplace) of the contract.

After McCrea moved into his condominium, his roof began to leak. He notified the resident manager, who in turn notified Fidinam, Cubilla's authorized representative. In the conversion of the apartments, Fidi-

nam had served as the construction manager and agent in fact. It was Fidinam that authorized the repairing of McCrea's roof. However, the roof continued to leak, and when the limited warranty on the "Schedule A" items was about to expire, Fidinam's general manager sent a letter stating that it would continue to work on the roof until it was repaired.

The first issue is whether the trial court properly entered a summary judgment on "all claims arising from the contract as to express and implied warranties between the parties." The seller contended it was entitled to a judgment, as a matter of law, because of the following arguments:

The condominium unit was a used good, [sic] without an implied warranty of habitability.

Assuming that the implied warranties existed, they were expressly waived by the Appellant by language in his Contract of Sale wherein the Appellant agreed to take the unit "without warranty from Seller, express or implied."

That the Appellee Fidinam had made no representations of the warranty alleged in the Petition and was not the seller.

■ When a summary judgment order does not state the grounds upon which it is granted, a party appealing from the order must show that each of the independent arguments alleged in the motion are insufficient to support the order. *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ).

■ In reviewing these arguments, we look to the agreement of the parties. If the contract is unambiguous, then its construction becomes a question of law for the trial court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). The pertinent sections of the contract are as follows:

(g) Purchaser understands that the unit has been converted from a rental unit. That purchaser has made a physical inspection of the unit and, thus *is taking the unit,* all appliances and utility fixtures and equipment *without warranty from seller, express or implied;* or in

the event purchaser has specified improvements to be made as per schedule A. Then seller shall, at closing, assign to purchaser any and all manufacturers warranties which he may have to said appliances, fixtures or equipment.

This agreement (including the instruments and documents referred to in subparagraph (d) of paragraph 10 and all exhibits hereto) constitutes the final and complete agreement between the parties. No representations, claims, statements, advertising or promotional activities made or conducted by seller or seller's agents or representatives shall be binding upon seller *unless the same are expressly set forth in this agreement or in a subsequent written agreement executed by seller.*

(emphasis added). Cubilla, on June 27, 1981, sent a subsequent written agreement to McCrea, which reads as follows:

Cubilla Condominium Corporation, N.V., as seller, warrants that the above condominium unit has been completed as of date hereof, and that for a period of one (1) year hereafter, provided said unit is owned by addressee, Seller will, at its own expense, repair or otherwise correct any defects (other than those being excluded) in said unit caused by defective materials or faulty workmanship incorporated into the construction of said condominium unit, *and defined in Schedule A* of your Earnest Money Contract.

(emphasis added). Under the terms of these documents, McCrea purchased the condominium without any type of warranty, except those listed in "Schedule A" and any express warranties given by a "subsequent written agreement."

■ An express warranty is created when a seller makes an affirmation of fact or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised. *See Bormaster v. Henderson,* 624 S.W.2d 655, 660 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). Cubilla and Fidinam, in support of the summary judgment, contend that no

other express warranties were made at the time McCrea purchased the condominium.

However, McCrea makes three arguments which he contends raise a fact issue that precludes a summary judgment. First, he submits that even if the contract states that he disclaimed all express and implied warranties, the provision is void under section 17.42 of the DTPA. Second, he claims that he purchased a new condominium to which an implied warranty of habitability applied. Finally, he claims that the letter he received from Fidinam raised a fact issue as to the existence of an express warranty for the roof.

■■■ We disagree with McCrea's argument that the disclaimer in the contract is rendered unenforceable by section 17.42 of the Texas Deceptive Trade Practices Act. McCrea was free to contract with Cubilla, and took the condominium "without warranty from seller [Cubilla], express or implied." This language is sufficiently clear and free from doubt so as to constitute an agreement that McCrea waived the implied warranty of fitness created by *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968), and also waived all express warranties. McCrea is bound by his agreement. *See G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982). McCrea contends that *Robichaux* authorizes only the disclaimer of warranties under a contract cause of action. However, *Robichaux* was brought under the Texas Deceptive Trade Practices Act, and the Texas Supreme Court gave effect to the disclaimer. *See also Ellmer v. Delaware Mini-Computer Systems, Inc.*, 665 S.W.2d 158 (Tex.App.—Dallas 1983, no writ). We hold that when a contract specifically states that no express or implied warranties are made, a cause of action for breach of express or implied warranties under either the DTPA or contract law has been waived, unless such provision is against public policy or some other statutory provision.

Because McCrea disclaimed his implied warranties, there is no issue as to whether such implied warranties existed for the purchase of a condominium converted from a used apartment, and thus, we need not consider appellant's second argument.

■■ In appellant's third argument, he claims that a letter he received from Fidinam superseded the disclaimer of expressed warranties and showed that the roof was expressly warranted. The pertinent parts of the letter read as follows:

> In confirmation of our telephone conversation, we acknowledge the existence of a persistent roof leak in your unit. We will continue our efforts to locate the source of your problem and resolve it to your satisfaction.
>
> In the unlikely event we cannot locate the leak before the end of your warranty period we will, of course, stand behind our product and remedy the problem at our expense.

We agree with appellant's argument that this letter constitutes a subsequent written agreement from the seller that created an express warranty. This letter was signed by the General Manager of Fidinam (U.S. A.), Inc., who was the attorney-in-fact for Cubilla. Cubilla admits within its response to interrogatories that Fidinam was authorized to execute contracts for it, and that, in connection with the conversion of the property into condominiums, Fidinam served as its construction manager and as an agent-in-fact.

Cubilla and McCrea contracted for the disclaimer of all expressed and implied warranties in the contract. However, the subsequent written agreement by Fidinam, Cubilla's representative, superseded the disclaimer of all express warranties, and thus created an express warranty on the roof. The trial court correctly granted the partial summary judgment as to alleged breaches of implied warranties, but erred in granting a summary judgment that there were, as a matter of law, no express warranties.

As a matter of law, the letter warrants that the appellees will repair the roof to McCrea's satisfaction. On remand, the issue before the trial court will be whether the appellees breached this warranty, and if so, then there must be a determination of

the damages, which were contractually limited to the repair of the roof. *See Rinehart v. Sonitrol of Dallas, Inc.,* 620 S.W.2d 660, 663 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).[1]

■ The appellees contend that if we hold that the letter dated May 18, 1982, contains a warranty, then the provisions of the letter were fully satisfied, and thus, there is no breach of warranty. The appellees did not make this point in their summary judgment motion, nor did they establish during the summary judgment proceedings that there was no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. As a result, this is a fact issue that must be determined by the trial court. Tex.R.Civ.P. 166–A(c) (Vernon Supp.1984).

Turning our attention to the misrepresentation claims under the DPTA, the record shows the appellant claimed and attempted to prove that the sellers misrepresented the fact that they would work on the roof until such time as the problem was corrected, and also that the roof was about two years old. When these claims were tried before the trial court, it ruled that appellant should take nothing, because he did not establish a material misrepresentation under DPTA.

■ The appellant contends the trial court erred in holding that a misrepresentation under the Deceptive Trade Practices Act had to be material. Misrepresentation under DTPA are statements, promises, or representations made before the contract is signed in order to induce the acceptance thereof. *Anthony Industries, Inc. v. Ragsdale,* 643 S.W.2d 167, 174 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). However, these misrepresentations are actionable only when they concern a material fact. *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980).

The appellant relies on *Jim Walter Homes v. Castillo,* 616 S.W.2d 630 (Tex. Civ.App.—Corpus Christi 1981, no writ) to argue that materiality is not a consideration in determining liability under the DPTA. However, *Castillo* instructs the trial court on submission of jury issues. A companion case, *Jim Walter Homes, Inc. v. Chapa,* 614 S.W.2d 838, 841 (Tex.Civ.App. —Corpus Christi 1981, writ ref'd n.r.e.), explained in more detail that materiality need not be submitted in special issues, since a jury issue is to be phrased in terms as similar as possible to the statute itself. These two cases involve the phrasing of jury issues, and not whether the alleged misrepresented fact must be material to be actionable under the DTPA. We do not find appellant's cited cases to be dispositive on the issue.

■ The court in *Pennington* did not explain why a misrepresentation must be material. The appellant argues that the mere showing of a misrepresentation should be actionable under the DTPA. However, we disagree, because it would create situations where the defendant would be strictly liable for any and all misrepresentations, regardless of the representation's importance to the parties' transaction. A misrepresentation must be such that it constitutes a producing cause of damages. *See Bormaster v. Henderson,* 624 S.W.2d 655, 660 (Tex.App.—Houston [14th Dist.] 1981, no writ). To do this the representation must be material. A material fact is one which causes a party to enter into the transaction. *See Putman v. Bromwell,* 73 Tex. 465, 11 S.W. 491 (1889); *Sawyer v. Pierce,* 580 S.W.2d 117, 124 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Thus, we hold that for a party to have a misrepresentation cause of action under the DTPA, the misrepresentation must have been material to the transaction.

Appellant also contends that if a misrepresentation had to be material, then the trial court erred when it found there was no material misrepresentation. He argues that the evidence conclusively established

---

1. *Rinehart* held the contractual limitations of actual damages is not a violation of section 17.42 of the DTPA, but an attempt to limit treble damages that are authorized by section 17.50(b) would be a violation of section 17.42.

the opposite of this finding, and alternatively, that this finding is against the great weight and preponderance of the evidence.

■ There were no findings of fact or conclusions of law requested or filed. Thus, all questions of fact are presumed to have been in support of the trial court judgment. *Goodyear Tire & Rubber Co. v. Jefferson Const.*, 565 S.W.2d 916, 918 (Tex.1978); 4 R. McDonald, Texas Civil Practice in District and County Court sec. 16.10 (rev. 1984).

■ The trial court found that there were no material misrepresentations. There is no evidence in the record that appellees' representation that the roof was approximately two years old was the cause of appellant's damages. Although there is evidence that the roof was approximately three years old, the evidence also shows that the characteristics of the roof would have been the same whether it was two or three years old.

■ Furthermore, McCrea claims that the appellees misrepresented the fact that they would work on the roof until such time as the problem was corrected. The record does not support this allegation. It shows that not only had the roof been repaired, but also that during Hurricane Alicia the roof did not leak. We conclude, in light of *Guthrie v. National Homes Corp.*, 394 S.W.2d 494 (Tex.1965), the evidence supports the trial court judgment that there were no misrepresentations of material fact.

We affirm the judgment of the trial court, except for that portion of the partial summary judgment that found there were no express warranties. We hold, as a matter of law, that the letter of May 15, 1982, created an express warranty on the roof. We remand that portion of this cause of action for determination of whether there was a breach of such warranty, and if so, whether there were any damages from that alleged breach.