March v. Lone Star 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-238-CV





MARCH EXPLORATION COMPANY,



 APPELLANT


vs.





LONE STAR GAS COMPANY, A DIVISION OF ENSERCH CORPORATION,



 APPELLEE



 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT



NO. CV89-0359-A, HONORABLE DICK ALCALA, JUDGE PRESIDING



 




PER CURIAM

 Appellant March Exploration Company appeals from a summary judgment rendered
against it and in favor of appellee Lone Star Gas Company, a division of Enserch Corporation. 
We will affirm.



BACKGROUND


 March Exploration Company succeeded Deminex Oil Company as "seller" under
a gas purchase contract covering gas produced from the Anne McGowan #1 well in Tom Green
County. The contract included a take-or-pay provision obligating Lone Star Gas Company, as
"buyer," to pay for a minimum amount of gas at a specified price whether or not it actually took
that amount. If Lone Star failed to purchase the minimum quantity within any accounting period,
March could enforce the take-or-pay provision by giving notice to Lone Star within four months
after the end of that period. Lone Star then had sixty days to pay the deficiency, but, until the end
of the contract, Lone Star retained the right to make up any amount paid for. March, however,
had to refund payment for any amount that could not be made up because of its inability to deliver
gas.

 Lone Star also agreed to construct additional pipeline in order to receive gas under
the contract. In exchange, March promised to pay a contribution toward construction costs. The
construction-contribution provision of the contract provided:



 Seller recognizes and agrees that Buyer's pipeline system does not extend to the
reasonable vicinity of the premises herein, and that it will be necessary for Buyer
to construct and install additional facilities consisting of approximately fourteen
thousand four hundred (14,400) feet of pipeline and appurtenant equipment in
order to receive the subject matter hereof. As part of the consideration to Buyer
hereunder, Seller agrees to pay Buyer, subject to the provisions of the following
paragraph, the sum of One Hundred Thirty Five Thousand One Hundred Ninety
Dollars ($135,190) as Seller's contribution in aid of construction of such facilities.

 Buyer and Seller agree that Buyer may deduct such sum from payments made
to Seller for gas delivered hereunder at the rate of fifty cents ($0.50) per MMBTU
of gas delivered hereunder commencing with initial deliveries and continuing until
Seller has so paid said One Hundred Thirty Five Thousand One Hundred Ninety
Dollars ($135,190) sum. In the event Seller sells and delivers less than two
hundred seventy thousand three hundred eighty (270,380) MMBTU during the first
five (5) accounting periods of the term hereof, Seller shall pay to Buyer said One
Hundred Thirty Five Thousand One Hundred Ninety Dollars ($135,190) sum,
provided that Seller's obligation to pay said One Hundred Thirty Five Thousand
One Hundred Ninety Dollars ($135,190) sum shall be reduced by the same
proportion that said deliveries during the first five (5) accounting periods bears to
the two hundred seventy thousand three hundred eighty (270,380) MMBTU.


 Under the contract, March assumed the risk and responsibilities for operation of
the well. Article IX provided:



 Seller shall regulate the flow of gas into Buyer's pipeline at the point of
delivery to the quantity desired by Buyer, from time to time, to meet the
fluctuating conditions of Buyer's market, it being understood that Buyer may, from
time to time, find it necessary to shut off entirely the flow of gas hereunder and
that in such event, Buyer shall not be liable to Seller for the resulting effect
thereof. . . .

 Seller retains full and continuing responsibility for the care and condition of all
wells and delivery line located on the premises and connected to Buyer's pipeline
under this contract. Buyer does not assume nor shall it have any responsibility or
obligation with respect to the care or condition of such wells or delivery line. . .
.



 The McGowan well produced gas only from June 1985 to February 1986 and in
April 1986. March delivered no gas from the McGowan well to Lone Star between May 1986
and January 1989, except for a small amount in September 1986. March contends that the
McGowan well's ability to produce gas was ruined by December 1985, as a result of having been
shut in for long periods of time. The McGowan lease expired on November 19, 1987.

 March sued Lone Star for (1) breach of the "take-or-pay" provision of the gas
purchase contract; (2) consequential damages to the McGowan #1 well and its producing
formation, and termination of the lease, all caused by Lone Star's breach of the gas purchase
contract; and (3) "transporting, marketing and selling gas by criminal means." The trial court
granted Lone Star's motion for partial summary judgment on the latter two claims. March does
not attack the granting of this partial summary judgment on appeal.

 After the granting of the partial summary judgment, March amended its pleading,
abandoning the claims decided against it and seeking only take-or-pay damages. Lone Star
counterclaimed to recover from March the balance due on the construction contribution. March
answered Lone Star's counterclaim by general denial and asserted the affirmative defenses of lack
of consideration and estoppel, both premised on Lone Star's own alleged breach of contract in
failing to request and take substantial amounts of gas.

 The trial court again granted a summary judgment, ordering that March take
nothing on its take-or-pay claim and that Lone Star recover $13,784.73 on its counterclaim. 
March appeals from this second summary judgment, raising three points of error.



STANDARD OF REVIEW


 In reviewing a summary judgment, this Court must determine whether the movant
has shown that there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. Tex. R. Civ. P. Ann. 166a(c) (Supp. 1992); Nixon v. Mr. Property Mgt. Co.,
Inc., 690 S.W.2d 546, 548 (Tex. 1985). In doing so, we take as true all evidence favoring the
non-movants and indulge every inference and resolve every doubt in their favor. Id. at 548-49. 
When, as in this case, the summary-judgment order does not state the specific ground upon which
it is granted, the appellant must show that each of the independent arguments in the motion is
insufficient to support the order. Tilotta v. Goodall, 752 S.W.2d 160, 161 (Tex. App. 1988, writ
denied); McCrea v. Cubilla Condominium Corp., 685 S.W.2d 755, 757 (Tex. App. 1985, writ
ref'd n.r.e.).



MARCH'S TAKE-OR-PAY CLAIM


 In addition to the take-or-pay clause, the gas purchase contract contains a
proportionate reduction clause which provides:



Seller warrants that it owns the entire interest in the gas reserves underlying the
premises covered hereby . . . and that Seller has the right to sell the same. Should
Seller not own such interest, then in addition to any other remedies to which Buyer
may be entitled, Buyer shall have no obligation to take or pay for any minimum
volume of gas under this Contract.



March owned no interest in the McGowan lease and thus no interest in the gas reserves. Lone
Star moved for summary judgment on March's take-or-pay claim on two grounds: (1) Lone Star
had no take-or-pay obligation under the contract by virtue of the proportionate reduction clause
because March owned no interest in the gas reserves, and (2) Lone Star owed no take-or-pay
deficiency because March's inability to deliver gas constituted a breach of contract and obligated
March to repay any deficiency payment.

 In its second point of error, March complains only that the trial court erred in
granting summary judgment for Lone Star on this claim on the first ground, that March is not an
"owner." The trial court did not, however, specify in its order that this was the ground on which
it granted summary judgment. Because the trial court could have granted Lone Star's motion for
summary judgment on the second ground, which March does not specifically challenge, March's
point of error presents nothing for review. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119,
121 (Tex. 1970); Thomson v. Norton, 604 S.W.2d 473, 476-77 (Tex. Civ. App. 1980, no writ);
Rodriguez v. Morgan, 584 S.W.2d 558, 559 (Tex. Civ. App. 1979, writ ref'd n.r.e.).

 We overrule March's second point of error.



LONE STAR'S COUNTERCLAIM


 In its first and third points of error, March complains that the trial court erred in
granting summary judgment for Lone Star on its counterclaim. In point of error one, March
complains generally that genuine issues of material fact exist. In point of error three, March
complains specifically that material fact issues exist regarding whether Lone Star's conduct caused
March's inability to produce from the McGowan well.

 The summary-judgment record supports Lone Star's allegations in its counterclaim
that March owes the construction-contribution debt. Lone Star alleges that March contracted to
contribute $135,190 toward the cost of constructing and installing a pipeline to the McGowan #1
well. The parties agreed that Lone Star would apply fifty cents per MMBTU of gas purchased
under the contract toward the contribution amount. If March sold Lone Star less than 270,380
MMBTU's in the first five accounting periods, March agreed to pay the $135,190, less reduction
for any recoupment. By letter agreement, Lone Star extended the recoupment period through May
1988. Lone Star attached copies of the gas purchase contract and the letter agreement as
summary-judgment evidence.

 Lone Star constructed the pipeline. The McGowan well last produced gas in
September of 1986. Up to that time, Lone Star had purchased only 36,055.411 MMBTU's of gas
under the contract. From these purchases, Lone Star applied $17,385.65 to March's construction
obligation, leaving a balance of $117,162.30 outstanding. Lone Star offered the affidavit of Steve
Cantrell, an Enserch accountant in Lone Star's Gas Purchase Department, to support these
allegations.

 Lone Star made demand for payment of the outstanding construction contribution
but March did not pay. March admits that if anyone is liable for payment of the construction
contribution under the contract, it is. To support these allegations Lone Star attached to its motion
for summary judgment March's answers to requests for admissions and the deposition of John
March, president of March Exploration.

 March does not dispute that Lone Star established its claim as a matter of law. 
March argues only that material fact issues remain with respect to March's affirmative defenses.

 Once Lone Star establishes its right to summary judgment as a matter of law, to
avoid summary judgment March must come forward with evidence raising a fact issue on each
element of at least one of its affirmative defenses. Nicholson v. Memorial Hosp. Sys., 722
S.W.2d 746, 749 (Tex. 1986); Seale v. Nichols, 505 S.W.2d 251, 254 (Tex. 1974). The fact
issue must be raised by evidence which would be admissible upon the trial of the case. Finkelstein
v. Southampton Civic Club, 675 S.W.2d 271 (Tex. App. 1984, writ ref'd n.r.e.).

 March argues that its summary-judgment evidence establishes that the parties
intended to satisfy the construction contribution primarily from production and that Lone Star's
failure to request and take substantial quantities of gas represents a failure of consideration with
respect to the construction-contribution provisions of the contract; that Lone Star's failure to
request gas for significant periods estops Lone Star from claiming the entire contribution; that the
fact that for a period of time Lone Star had no right-of-way to use the pipeline influenced Lone
Star's decision to take only small amounts of gas; and finally, that Lone Star shut in the well more
frequently than "from time to time," as permitted by the Article IX, constituting a further failure
of consideration, which relieves March from liability for the construction contribution.

 Despite these arguments, the summary-judgment record contains no proof
precluding summary judgment. The contract clearly requires March to pay for the construction,
even though Lone Star agreed to look first to production to recoup the debt. The debt is not
contingent upon Lone Star's securing a right-of-way or purchasing substantial volumes of gas. 
In fact, the contract did not require Lone Star to purchase substantial volumes of gas or even to
purchase any minimum quantity, but only to pay for a minimum quantity if not taken. 
Furthermore, March is not relieved of liability even if Lone Star's failure to take substantial
volumes of gas occasioned the cessation of production. Under the contract, March assumed the
risk and responsibility for the care and condition of the wells.

 All of March's summary-judgment evidence relates to arguments attempting to
establish that the parties contracted for something other than that which the contract's written
terms provide. March relies primarily on two affidavits of John March, stating that the parties
intended to satisfy the construction contribution primarily from production, and that "from time
to time," as used in the contract, meant not more than two or three days. However, parol
evidence is generally inadmissible to vary the unambiguous terms of a contract. R & P Enter. v.
LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 519 (Tex. 1980); Heffron v. Pollard, 11 S.W. 165,
166-67 (Tex. 1889); Clark v. Dedina, 658 S.W.2d 293, 297 (Tex. App. 1983, writ dism'd);
Mason v. Mid-Continent Supply Co., 374 S.W.2d 922 ( Tex. Civ. App. 1964, writ ref'd n.r.e.); 
 Absent allegations of fraud, accident or mistake, parol evidence is not admissible to show the
parties' intent where, as here, the contract is unambiguous. Tenneco Oil Co. v. Alvord, 416
S.W.2d 385 (Tex. 1967); Murphy v. Dilworth, 151 S.W.2d 1004 (Tex. 1941).

 Although one of March's affirmative defenses is couched in terms of failure of
consideration, it does not come within the exception that permits a party to introduce parol
evidence to vary or contradict a recital of consideration in a written contract. See, e.g., Lakeway
Co. v. Leon Howard, Inc., 585 S.W.2d 660, 662 (Tex. 1979); Time Ins. Agency v. Grimes, 613
S.W.2d 40, 42 (Tex. Civ. App. 1981, no writ). Here, the consideration is contractual. A party
cannot alter the terms of the contract under the guise of proving failed consideration when the
consideration is contractual. Lakeway Co., 585 S.W.2d at 662; D. Sullivan & Co. v. Schreiner,
222 S.W.314 (Tex. Civ. App. 1920, writ ref'd); Humble Oil & Ref. Co. v. Strauss, 243 S.W.
528, 533-34 (Tex. Civ. App. 1922, no writ).

 We overrule March's first and third points of error and affirm the trial court's
judgment.


[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: August 12, 1992

[Do Not Publish]