IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-442-CV





LAWRENCE J. FRIEDMAN,



 APPELLANT


vs.





FRANKLIN FEDERAL BANCORP, A FEDERAL SAVINGS BANK,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 478,355, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





PER CURIAM

 This is an appeal from a summary judgment in a suit on a promissory note and
guaranty agreement. We will affirm the trial court's judgment.



BACKGROUND


 On July 22, 1985, Summertree Joint Venture ("Summertree"), by and through its
managing partner Levin & Associates, Inc. ("L.A.I."), executed a promissory note in the principal
sum of $7,000,000.00 in favor of Franklin Savings Association, a Texas savings and loan
association ("FSA"). Appellant Lawrence J. Friedman, and others, executed a guaranty
agreement in favor of FSA, guaranteeing Summertree's obligation under the note.

 On January 24, 1990, appellee Franklin Federal Bancorp, (1) a Federal Savings Bank
("Bancorp"), filed suit against Friedman, alleging that Summertree had defaulted in its note
payments, and that Friedman was liable for all sums owing on the note in his capacity as a partner
of Summertree and as a guarantor under the guaranty agreement. Friedman filed an unverified
general denial pleading that Bancorp had failed to join all necessary parties (2) and that the guaranty
agreement was unenforceable because of lack of consideration. (3)

 On April 14, 1992, Bancorp filed a motion for summary judgment to which it
attached the affidavits of Dianne C. Flynn, a Bancorp vice president; Dale Corcoran, a Bancorp
loan operations supervisor; and Kemp W. Gorthey, Bancorp's counsel of record. (4) Copies of the
note and guaranty agreement are attached to Flynn's affidavit. On May 5, 1992, Friedman filed
his response to Bancorp's motion for summary judgment, his affidavit in support of his response,
a motion to strike portions of Flynn's and Corcoran's affidavits, and a supplemental answer. The
supplemental answer raised the affirmative defenses of accord and satisfaction, laches, impairment
of collateral, release, res judicata, and settlement. On May 7, 1992, the trial court granted
Bancorp's motion for summary judgment. Friedman filed a motion for reconsideration on May
21, 1992, and a motion for new trial June 3, 1992. Thereafter, Friedman perfected this appeal
from the trial court's summary judgment in favor of Bancorp.



DISCUSSION


1.  Standard of Review

 The standards for reviewing a motion for summary judgment are well established. 
The movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law. In deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant
will be taken as true. This court must indulge every reasonable inference in favor of the
nonmovant and resolve any doubts in his favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).



2.  The Summary-Judgment Record

 Before we address Friedman's points of error on appeal, we must first identify the
pleadings and evidence that were before the trial court at time of the hearing. Tex. R. Civ. P.
166a(c); Gandara v. Novasad, 752 S.W.2d 740, 743 (Tex. App.--Corpus Christi 1988, no writ)
(summary judgment shall be rendered on evidence on file at the time of the hearing, or filed
thereafter and before judgment with permission of court). 

 Friedman filed his response, affidavit, motion to strike, and supplemental answer
two days before the hearing on the motion for summary judgment. Except on leave of court, the
adverse party may file and serve opposing affidavits or other written response not later than seven
days before the day of hearing. Tex. R. Civ. P. 166a(c). The trial court rendered an order on
June 1, 1992, granting Friedman leave to file late his response and motion to strike. (5) The order
does not expressly grant leave to file Friedman's affidavit late; however, Friedman's response
refers to his affidavit "attached hereto." Accordingly, the trial court's leave to file the response
late included Friedman's affidavit. 

 Finally, although the trial court's June 1st order does not refer to Friedman's
supplemental answer, the trial court's judgment recites that the court considered "the pleadings
and papers on file." The supplemental answer was on file at the time of the summary-judgment
hearing. Accordingly, Friedman's response, affidavit, motion to strike, and supplemental answer
were a part of the record before the trial court at the time of the summary-judgment hearing. 


3.  Friedman's First Point of Error 

 In his first point of error, Friedman asserts that the trial court erred in sustaining
Bancorp's motion for summary judgment because Bancorp's summary-judgment proof does not
establish its prima facie case on the note or guaranty agreement as a matter of law. After
reviewing Friedman's arguments under this point, we construe the first point of error to assert that
the trial court erred in sustaining Bancorp's motion for summary judgment because the summary-judgment proof does not establish that Bancorp is entitled to summary judgment as a matter of
law. See O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 114 (Tex. 1976) (rule of liberal
construction applies to points in appellant's brief; merits of error will be passed on in light of
statement and arguments).

 In its motion for summary judgment, Bancorp pleaded that Friedman was liable for
the indebtedness on two grounds: partnership liability under the note and liability as a guarantor
under the guaranty agreement. The trial court's summary judgment does not state the specific
grounds on which it was granted. A party appealing from such a judgment must show that each
of the independent grounds alleged in the motion is insufficient to support the judgment. McCrea
v. Cubilla Condominium Corp. N.V., 685 S.W.2d 755, 757 (Tex. App.--Houston [1st Dist.] 1985,
writ ref'd n.r.e.). Thus, the summary judgment will be upheld if the summary-judgment proof
shows as a matter of law that Friedman is liable for the indebtedness under either the note or the
guaranty agreement. 



 A.  Summary-Judgment Proof That Friedman Is a Partner in Summertree

 Friedman first argues that no proof exists that he is a partner of Summertree;
therefore, there is no summary-judgment proof that he is liable under the note. Although
Friedman did not raise this objection in the trial court, the failure to object is irrelevant to the
issue of the sufficiency of Bancorp's summary-judgment proof to support the summary judgment. 
See Sorrells v. Giberson, 780 S.W.2d 936, 937 (Tex. App.--Austin 1989, writ denied). Steven
H. Levin, President of L.A.I., the managing partner of Summertree Joint Venture, executed the
note; Friedman did not execute the note. (6) Thus, Friedman can be held liable under the note only
if the summary-judgment proof shows, as a matter of law, that he is a partner in Summertree. (7) 

 Bancorp relies on the allegation in its petition that Summertree is a partnership and
that Friedman is a partner of Summertree. Bancorp argues that, because Friedman did not file
a verified denial, the allegation is deemed admitted. In its petition, Bancorp pleaded that
Summertree Joint Venture is a general partnership of which Friedman is a general partner. 
Friedman did not file a verified denial as to either allegation. See Tex. R. Civ. P. 93(5). The
failure to deny partnership status by a verified denial results in an admission of the existence of
a partnership that cannot be controverted at trial. Washburn v. Krenek, 684 S.W.2d 187, 191
(Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.). Also, the failure to deny under oath
that one is a member of a partnership is equivalent to the admission of partnership. Watson v.
Texas State Bank of Jacksonville, 222 S.W.2d 341, 343 (Tex. Civ. App.--Texarkana 1949, no
writ). We think the effect of Friedman's failure to deny Bancorp's allegation is equivalent to that
of a judicial admission in a summary-judgment proceeding. See Davis v. State, 846 S.W.2d 564,
568 (Tex. App.--Austin 1993, no writ) (judicial admissions are not proof, but waiver of proof). 
Accordingly, we hold that Bancorp established as a matter of law that Summertree is a general
partnership of which Friedman is a general partner. 



 B. Summary-Judgment Proof Related to Notice of Default

 Friedman next argues that the note requires notice of default five days before the
lender's exercise of remedies for default. Friedman asserts that he objected to the summary-
judgment proof related to notice of default as conclusory. (8) Friedman further argues that the
recitations in the Flynn affidavit are ambiguous on this issue because they appear to state that all
notices of foreclosure were given, but do not state that notice of default was given. 

 Friedman did not preserve these objections to the summary-judgment proof. While
it is true that in his motion to strike Friedman objected to Flynn's affidavit as conclusory, his
objection was not directed at Bancorp's failure to show that Summertree was given notice of
default. Friedman's motion to strike recites: 



Friedman moves to strike paragraph 7 of the Flynn Aff. in its entirety on the basis
that it contains factual and legal conclusions regarding demand and notice as well
as the amount received at the foreclosure of the real Property securing the Note. 
To be admissible, the Flynn Aff. should give specific facts as to when and how
notice of the trustee's sale was given to Friedman, if at all, as well as to introduce,
at a minimum, the Trustee's Deed, and to state the expenses accrued and charged
to Friedman in connection with the foreclosure.



(Emphasis added.) Friedman objected to Flynn's affidavit on the basis that its recitations relating
to the notice of the trustee's sale were conclusory. The motion to strike makes no reference to
notice of default. Accordingly, Friedman cannot raise this issue for the first time on appeal. Tex.
R. Civ. P. 166a(c). 

 Furthermore, the recitations in Flynn's affidavit relating to notice are not
conclusory. Paragraph seven of Flynn's affidavit recites:



Summertree is in default under the Note and Deed of Trust, having failed to make
payments of principal and interest as called for thereunder. On or about December
5, 1988, following all demands and notices required by the Note and Guaranty and
all applicable law, the Property was duly foreclosed upon by Franklin Federal. 
After allowing all just and lawful offsets, credits and payments, including crediting
all amounts bid and received at the foreclosure sale, an outstanding balance of
principal and accrued and unpaid interest remains and is currently due and owing
on the Note to Franklin Federal.



(Emphasis added.) This uncontroverted summary-judgment proof is sufficient to establish that
all notices required by the note were given, including notices of default and foreclosure. Tex. R.
Civ. P. 166a(c).

 C. Corcoran Affidavit Is Not Conclusory

 Next, Friedman argues that the statement of the amounts due under the note recited
in paragraph 4 of Corcoran's affidavit is wholly conclusory. The Corcoran affidavit recites, in
pertinent part:



On or about December 5, 1988, after applying all payments and credits, the
outstanding principal balance due and owing on the Note as of the day immediately
proceeding [sic] foreclosure of the property securing same was Six Million Sixty-Two Thousand Four Hundred Eleven and 37/100 Dollars ($6,062,411.37). After
applying all subsequent payments and credits, including crediting all amounts bid
and received at the foreclosure sale, the outstanding principal and interest balances
due and owing under the Note as of March 14, 1992, are as follows:


Principal 2,633,669.08

Accrued Interest: 829,671.68

Per Diem Interest Accrual Rate 896.18



Additional unpaid interest continues to accrue on the outstanding principal balance
on the Note until paid or satisfied.



 Corcoran's affidavit is made on personal knowledge. In the affidavit, he identifies
the note sued on. He further recites the principal and interest due on the note after applying all
payments and credits made before and after foreclosure. These recitations of the amounts due
under the note are not conclusory. See American 10-Minute Oil Change, Inc. v. Metropolitan
Nat'l Bank--Farmer's Branch, 783 S.W.2d 598, 601 (Tex. App.--Dallas 1989, no writ); 8920 Corp.
v. Alief Alamo Bank, 722 S.W.2d 718, 720 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd
n.r.e.) (absent controverting evidence raising fact issue, affidavit is not conclusory when it is
made on personal knowledge, identifies note, and recites principal and interest due).



 D. Bancorp Is Not Required To Show Its Calculations and Offsets

 Friedman also complains that the affidavit contains no calculations or offsets.
Generally, it is not necessary to prove the method of calculation unless controverting proof raises
a fact issue as to the method of calculation. See Atchley v. NCNB Tex. Nat'l. Bank, 795 S.W. 2d
336, 337 (Tex. App.--Beaumont 1990, writ denied); 8920 Corp, 722 S.W.2d at 720. Friedman
asserts that Corcoran's calculation is incorrect and internally inconsistent with the terms of the
note because the affidavit recites that Friedman is liable for the entire principal amount due under
the note ($2,633,669.08) while, under the terms of the note, he is at most liable for one-fourth
of the principal, or approximately $1,515,602.00. We find no inconsistency between Corcoran's
affidavit and the terms of the note. 

 The Corcoran affidavit recites that on December 5, 1988, after allowing for all
payments and credits, the outstanding principal balance due and owing on the Note as of the day
immediately preceding foreclosure of the property securing the note was $6,062,411.37. This
affidavit does not recite that Friedman is liable for the entire amount of the outstanding principal. 
The principal amount Bancorp claims Friedman is liable for is set forth in a different affidavit,
that of Flynn.

 Flynn's affidavit recites that Friedman's liability is limited to twenty-five percent
of the sum of the outstanding principal balance of the note at the time Franklin Federal first
demanded payment thereunder. (9) Accordingly, Friedman's liability under the note is limited to
$1,515,602.84, which is the principal amount prayed for in Bancorp's motion for summary
judgment (10) and the principal amount the trial court awarded Bancorp in its judgment. We
conclude that Bancorp's summary-judgment proof establishes, as a matter of law, the principal
amount of the indebtedness for which Friedman is liable. 

 Friedman next argues that the Bancorp's summary-judgment proof provides no
explanation why his letter of credit was not applied until one year after it was foreclosed upon. 
Friedman's affidavit recites that at the inception of the loan, each guarantor was required to give
as collateral a letter of credit in the amount of $116,000.00. Shortly after the loan went into
default, FSA made demand on each guarantor's letter of credit. Friedman demanded that his
letter-of-credit proceeds be applied to reduce the outstanding principal due on the note. This
demand was refused. Friedman's affidavit further recites that it took over a year to apply the
letter-of-credit proceeds to the note and that the proceeds were eventually applied to accrued
interest, including interest that accrued during the year when FSA should have applied these
proceeds to principal.

 Although we take as true Friedman's recitations in his affidavit, he has failed to
raise a fact issue as to the correctness of Bancorp's figures. As Friedman points out in his brief,
the note does not require Bancorp to apply sums payable under the note to principal. The manner
and order in which these sums are applied is left to Bancorp's discretion. (11) Furthermore,
Friedman offered no summary-judgment proof that Bancorp's delay in applying the $116,000.00
increased Friedman's liability for the debt beyond that provided for by the terms of the note, or
that a fact issue otherwise exists regarding Bancorp's application of Friedman's letter-of-credit
proceeds.

 Friedman next argues that no "statement" exists concerning the application of the
amounts raised at foreclosure. This complaint is without merit. Corcoran's affidavit specifically
recites that all amounts bid and received at the foreclosure sale were applied as a credit against
the outstanding indebtedness.

 Next, Friedman asserts that no evidence exists related to the application of the
$440,000.00 obtained from the release of co-guarantors after the note went into default, or of how
or when it was applied. This complaint is also without merit. Corcoran's affidavit recites that
all payments and credits received before and after foreclosure were applied against the outstanding
debt. Friedman offered no summary-judgment proof that the $440,000.00 was not applied, was
improperly applied, or that he was prevented from presenting summary-judgment proof on this
issue. Because no fact issue was raised, Bancorp was not required to show how and when the
$440,000.00 was applied. 

 Finally, Friedman complains that Corcoran's affidavit contains no "statement" of
how over one million dollars of collateral letters of credit were applied. Friedman did not raise
this complaint in his response, affidavit, or motion to strike. Accordingly, we will not consider
this complaint on appeal. Tex. R. Civ. P. 166a(c) (issues not expressly presented to the trial court
by written motion, answer, or other response shall not be considered on appeal as grounds for
reversal). 

 On this summary-judgment record, Bancorp is not required to show its method of
calculation. See Atchley, 795 S.W.2d at 337; 8920 Corp., 722 S.W.2d at 720. We hold that
Bancorp's summary-judgment proof shows that, as a matter of law, Friedman is liable as a partner
in Summertree for the outstanding indebtedness due and owing under the note to the extent
provided by the terms of the note. Accordingly, we need not address Friedman's remaining
arguments challenging the sufficiency of the summary-judgment proof to show his liability under
the guaranty agreement. Friedman's first point of error is overruled.



4. Remaining Points of Error

 In his second point of error, Friedman asserts that the trial court erred in not
sustaining his motion to strike portions of the Flynn and Corcoran affidavits because the affidavits
are conclusory and deficient. First, Friedman argues that the affidavits are conclusory and
deficient on the issues of: (1) notice to Summertree and Friedman of the purported foreclosure of
the real property securing the note; (2) the amount received at the Trustee's sale or how these
proceeds were applied by Bancorp; and (3) notice of default. We have already determined that,
in the absence of controverting summary-judgment proof, the recitations in the Flynn and
Corcoran affidavits establish, as a matter of law, that all notices of foreclosure required by the
note were given and that all payments and credits, including the proceeds from the foreclosure,
were applied to the indebtedness. Thus, the affidavits are neither conclusory nor deficient on
these issues. Accordingly, the trial court did not err in refusing to strike the Flynn and Corcoran
affidavits on these bases. 

 Friedman argues that the affidavits are conclusory and deficient with respect to the
terms of the Guaranty at all since it is illegible. The actual objection raised in Friedman's motion
to strike recites, "Friedman objects to the Flynn affidavit on the basis that Exhibit "B" [the
guaranty agreement] attached hereto is illegible and intelligible [sic]." The summary judgment
can be upheld on the basis of the summary-judgment proof related to Friedman's liability under
the note and without reference to the terms of the guaranty. 

 Friedman also argues that the affidavits are conclusory and deficient on the issues
of: (1) the calculation of Friedman's deficiency pursuant to paragraph twenty-three of the
Guaranty; and (2) any waiver by him of his right to be released by FSA's or Bancorp's release
of the other co-guarantors. Friedman did not raise these objections in his motion to strike,
therefore, he has waived them. Tex. R. Civ. P. 166a(c); Tex. R. App. P. 52(a). 

 Flynn also reurges the arguments he raised under his first point of error related to
the $440,000.00 received from co-guarantors as partial satisfaction of the amounts owed under
the guaranty and the $116,000 in proceeds from his letter of credit. However, these objections
to the affidavits were not raised in the motion to strike. Accordingly, the trial court did not err
in failing to strike the Flynn and Corcoran affidavits on these bases. We find no error in the trial
court's refusal to sustain Friedman's motion to strike portions of the Flynn and Corcoran
affidavits. Point of error two is overruled.

 In his third point of error, Friedman asserts that the trial court erred by not finding
that he had raised fact issues on each and every element of his defenses of impairment of collateral
and release and by sustaining Bancorp's motion for summary judgment on the note and guaranty. 
Basically, Friedman asserts that Bancorp's release of co-guarantors for less than the full value
of their guarantees impaired the co-guarantors' "collateral" and, therefore, Bancorp's conduct
released Friedman from all liability. (12) Friedman's summary-judgment proof does not raise a fact
issue on his affirmative defenses. Paragraph five of the note provides, in pertinent part:



Maker and any endorsors or guarantors hereof agree that from time to time and
without notice, Payee may . . . consent to . . . the release of any existing security
for this Note and accept partial payments of this Note . . . all without in any
manner affecting the liability of Maker or any endorser or guarantor under or with
respect to this Note, even though Maker or such endorser or guarantor is not a
party to such agreement. 



(Emphasis added.) The summary-judgment proof establishes, as a matter of law, that the maker
and guarantors' liability under the note is not affected by the release of the co-guarantors. 

 Friedman argues that he is not bound by paragraph five because no summary-judgment proof exists to show that he is a partner in Summertree or that he authorized anyone to
execute the note on his behalf; thus, Friedman argues, paragraph five is ineffective as to him
absent his signature. As to Friedman's first contention, we have already determined that Bancorp
established, as a matter of law, that Friedman is a general partner in Summertree. Furthermore,
Friedman offered no summary-judgment proof that Summertree's managing partner was not
authorized to sign the note. Creation of the partnership relationship furnishes the presumption that
each individual partner is the authorized agent for the rest. Crozier Rhea & Co. v. Kirker, 4 Tex.
252, 258 (Tex. 1849). In the absence of controverting proof, the presumption is sufficient. 
Thus, when Summertree's managing partner executed the note through its president (13), the note
became a partnership obligation. It is axiomatic that Summertree's partners are personally liable
for partnership debts jointly and severally with all other partners. Gray v. Federal Deposit
Insurance Corp., 841 S.W.2d 72, 82 (Tex. App.--Houston [1st Dist] 1992, writ granted w.r.m.,
848 S.W.2d 85 (Tex. 1993). 

 Because Friedman's remaining arguments under this point relate exclusively to his
liability under the guaranty, and the judgment can be sustained on the basis of his liability under
the note, we need not reach these arguments. Point of error three is overruled.



CONCLUSION


 The trial court's judgment is affirmed.



[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: August 11, 1993

[Do Not Publish]
1. [1]  FSA was declared insolvent on or about September 30, 1988, and the Federal Savings and
Loan Insurance Corporation (FSLIC) was appointed receiver for FSA. Franklin Federal Bancorp
acquired certain assets from FSLIC as receiver of FSA, including the note, guaranty agreement,
and deed of trust. These facts are recited in one of the affidavits filed in support of Bancorp's
motion for summary judgment. Friedman objected to these recitations of fact in his motion to
strike, but in his brief on appeal, does not raise a complaint related to these facts.
2. [2]  See Tex. R. Civ. P. 39.
3. [3]  See Tex. R. Civ. P. 93(9).
4. [4]  Gorthey's affidavit relates to Bancorp's attorney's fees.
5. [5]  The trial court's order granting leave to file recites that Bancorp did not object to the late
filing of Friedman's response or motion to strike. The order overruled the motion to strike.
6. [6] Friedman does not dispute that the note is an obligation of Summertree. The copy of the
note attached to Bancorp's motion for summary judgment establishes, as a matter of law, that the
note is a partnership obligation. See footnote 13, infra.
7.   The rights, duties, and liabilities of joint adventurers are generally governed by the
rules applicable to partnerships. See Woodrum v. Cowan, 468 S.W.2d 592, 598 (Tex. Civ.
App.--Austin), modified on other grounds, 472 S.W.2d 749 (Tex. 1971); Simkins v. Outdoor
Resorts S. Padre Island, 684 S.W.2d 754, 756 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.). 
Generally, all partners are liable jointly and severally for all debts and obligations of the
partnership. Texas Uniform Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132b, § 15 (West
Supp. 1993); Gray v. Federal Deposit Insurance Corp., 841 S.W.2d 72, 82 (Tex. App.--Houston
[1st Dist.] 1992), writ granted w.r.m., 848 S.W.2d 85 (Tex. 1993).
8.   Friedman did not offer summary-judgment proof to show that notice was not given or
was not timely.
9. [9]  The note provides that Bancorp shall be deemed to have made demand for payment on the
earlier of the day on which an actual demand is made or the day immediately preceding the
foreclosure on the deed of trust. The Flynn affidavit recites that on June 21, 1990, Franklin
Federal made demand on Friedman for payment of the amounts owing on the Note and Guaranty. 
However, the Corcoran affidavit reflects that the day immediately preceding foreclosure was
December 5, 1988, which is earlier than the date of actual demand. Accordingly, pursuant to the
terms of the Note, Bancorp is deemed to have demanded payment on December 5, 1988.
10. [10]  In pertinent part, Bancorp prayed for final summary judgment against Friedman as follows:


(a) past due principal on the Note in an amount not to exceed
$1,515,602.84; [and]


(b) prejudgment interest as provided for under the Note and the
Guaranty in the amount of $829,671.68 as of March 14, 1992, plus
any additional unpaid pre-judgment interest accruing from March
15, 1992, to the date of judgment to the extent allowed by
applicable law[.]
11. [11]  Paragraph 2(f) of the note addresses the manner of payment and application of funds for
all sums payable under the note or other security documents. Paragraph 2(f) provides: "Except
as otherwise specifically provided herein, all payments on this Note shall be applied to the
payment of accrued interest and principal in the manner and order in which Payee shall determine
in its sole discretion, subject to the provisions hereof regarding legal interest limitations."
12.   Friedman's response and his supplemental answer do not indicate whether his
impairment-of-collateral defense is based on Tex. Bus. &. Com. Code Ann. § 3.606 (West
1968) or on the common-law defense. See T.O. Stanley & Boot Co. v. Bank of El Paso, 847
S.W.2d 218, 223 (Tex. 1992). Regardless of which he relies on, our disposition of his third point
of error is the same. 
13. [13]  The note is signed as follows:


"Summertree Joint Venture, a Texas joint venture 


By: Levin & Associates, Inc., a Texas Corporation, Managing 
Partner


By: Steven H. Levin, President