walker 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00487-CV







Victoria Joint Venture and Thomas A. Anderson, III, Appellants



v.



Helen R. Walker and Victoria County Public Facilities Corporation, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-09229-A, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 This is an appeal of a summary judgment granted in favor of appellees Helen R.
Walker and the Victoria County Public Facilities Corporation (the "Public Facilities
Corporation"). Appellants Thomas A. Anderson, III and Victoria Joint Venture (collectively the
"Joint Venture") sued appellees and three other defendants, John Pouland and Norman Donelson,
both of the Texas General Services Commission (the "GSC"), and James Wayne, on multiple
causes of action arising out of the award of a state leasehold to Wayne without competitive
bidding. Only one cause of action raised by the Joint Venture is relevant to appellees. The Joint
Venture alleged that appellees participated with the other defendants in a civil conspiracy to
tortiously interfere with a prospective contract and to induce GSC officials to violate the
competitive bidding statute. See Tex. Rev. Civ. Stat. Ann. art. 601b, § 6.05(c) (West Supp.
1995) (the "competitive bidding statute"). The trial court granted appellees' motion for summary
judgment and severed the Joint Venture's claims against appellees into a separate cause number. (1) 
The Joint Venture appeals the trial court's judgment in four points of error. We will affirm the
judgment of the trial court.



BACKGROUND


 In 1980, the GSC invited the Joint Venture to submit a bid under the competitive
bidding statute to provide a leasehold for the offices of the Texas Department of Human Services
(the "TDHS") in Victoria, Texas. After the Joint Venture successfully bid to provide an office
building for the TDHS, it obtained financing, acquired a site, and constructed a building to be
used for the TDHS leasehold. The primary term of the Joint Venture lease expired on August 31,
1993 (the "1980 Joint Venture lease").

 Before the expiration of the 1980 Joint Venture lease, the Joint Venture and the
TDHS discussed an increase in the size of the leasehold. Because economic reasons made it
impractical to add to the existing space at the prevailing rental rate, it was decided that the
expansion would be accomplished through a new competitive bid for a leasehold to meet the larger
space requirements. By letter dated November 23, 1992, the TDHS advised the Joint Venture that
it would be afforded an opportunity to bid. However, the GSC never issued an invitation for a
bid. Instead, the Joint Venture learned in April 1993 of a plan to relocate the TDHS leasehold
without competitive bidding to the Town Plaza Mall, which defendant Wayne owned.

 When the Joint Venture learned of this proposal, Anderson contacted the GSC and
was told that the appropriate GSC representative, Donelson, could not meet with him until April
22, 1993. Anderson scheduled a meeting with Donelson for that date and was assured by Amy
Finley, a GSC lease planner, that no action on the lease would be taken before that time. Despite
this assurance, the TDHS entered into a "new lease" with Wayne on April 21, 1993 without
competitive bidding. (2) This lease term began to run on September 1, 1993, after the expiration of
the Joint Venture lease.

 The Joint Venture sued appellees, claiming they participated in a civil conspiracy
to tortiously interfere with a prospective contract and to induce GSC officials to violate the
competitive bidding statute. Appellees filed a motion for summary judgment, asserting the
affirmative defense of official immunity and claiming that, as a matter of law, the Joint Venture
had no cause of action against them for civil conspiracy or tortious interference. The trial court
granted their motion for summary judgment.



DISCUSSION


 In four points of error, the Joint Venture complains that the trial court erred in
granting appellees' motion for summary judgment. The standards for reviewing a motion for
summary judgment are well established:



(1) The movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law.


(2) In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as
true.


(3) Every reasonable inference must be indulged in favor of the nonmovant and
any doubts resolved in its favor. 



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 The question on appeal is not whether the summary-judgment proof raises a fact
issue, but whether the summary-judgment proof establishes as a matter of law that no genuine
issue of material fact exists as to one or more of the essential elements of the plaintiff's cause of
action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). When the order does
not give a specific reason for the granting of the judgment, the nonmovant, on appeal, must show
why each ground asserted in the motion is insufficient to support the order. Rogers v. Ricane
Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989); McCrea v. Cubilla Condominium Corp., 685
S.W.2d 755, 757 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 In their motion for summary judgment, appellees asserted: "Pursuant to a reading
of Plaintiff's Original Petition on file with this Honorable Court, Defendants argue that Plaintiffs
have not established a cause of action for civil conspiracy." The Joint Venture asserts in its third
point of error that the trial court erred in granting summary judgment on this ground. We must
thus determine whether appellees proved that no genuine issue of material fact exists as to one or
more essential elements of the Joint Venture's cause of action for civil conspiracy, thereby
entitling them to judgment as a matter of law. (3)

 There are five essential elements of a cause of action for civil conspiracy: (1) two
or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or
course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. 
Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); see also Triplex Communications,
Inc. v. Riley, 38 Tex. Sup. Ct. J. 765, 767 (June 8, 1995). The Joint Venture alleged that (1) all
five defendants, including appellees; (2) intentionally conspired to keep the Joint Venture from
obtaining a new lease; (3) corresponded or met collectively or in small groups to agree on a
course of action to prevent Joint Venture from obtaining a new lease; (4) took actions to insure
that Wayne would be awarded the lease without complying with the competitive bidding statute
and conspired to induce GSC officials to violate the competitive bidding statute; and (5) that these
actions resulted in damages. Appellees claim that the uncontroverted summary-judgment proof
conclusively established the absence of the fourth essential element of a civil conspiracy claim--one
or more unlawful, overt acts.

 The Joint Venture alleged that the following events gave rise to the conspiracy
between appellees and Pouland, Donelson, and Wayne. In June 1992, the Victoria County voters
had rejected a general obligation bond issue to finance the acquisition of facilities for the County
Health Department. One of the facilities the County considered acquiring with these bonds was
the Town Plaza Mall. Though the bond issue was rejected, Walker, County Judge of Victoria
County, met with Wayne in October of 1992 to discuss acquisition of Town Plaza Mall by
Victoria County for use in part by the County Health Department. She also discussed with Wayne
her intention to meet with GSC representatives to request relocation of the TDHS leasehold to
Town Plaza Mall. According to the Joint Venture, Walker's plan was to get other state agencies
to relocate at the Town Plaza Mall, thereby generating sufficient rental income from the State of
Texas for Victoria County to issue revenue bonds to purchase the mall. The Joint Venture
contends that Walker later met with Pouland and Donelson of the GSC to persuade them to
approve the award of the TDHS leasehold to Wayne without a competitive bid. On the same day
as this meeting, Pouland and Donelson directed Finley, one of their staff members, to contact the
TDHS and induce it to abandon its request for the competitive bid and agree to move the TDHS
office into the Town Plaza Mall. The TDHS leasehold was subsequently awarded to Wayne
without competitive bidding. Walker thereafter moved forward with her plan to acquire the Town
Plaza Mall and talked to potential investors about the revenue bonds. She obtained authority from
the Victoria County Commissioner's Court to issue revenue bonds for the purchase of the Town
Plaza Mall and to retain financial advisors and bond counsel to prepare the bond issue. The
Public Facilities Corporation was formed as a nonprofit corporation for the express purpose of
issuing revenue bonds and purchasing the Town Mall Plaza from Wayne, thus receiving the
benefits of the conspiracy and facilitating the transfer of a part of those benefits to Wayne. The
Public Facilities Corporation entered into a contract with Wayne to purchase the Town Plaza Mall
on July 1, 1993. 

 According to appellees, the summary-judgment evidence conclusively established
that there was no violation of the competitive bidding statute and, therefore, no unlawful, overt
act. Appellees' summary-judgment evidence established the following facts. (4) On December 2,
1992, the State of Texas entered into a lease agreement with Wayne for space in the Town Plaza
Mall (the "1992 Wayne lease"). Section 5(a) of the lease (the "add-on provision") permitted the
State to lease additional space: "Lessor further agrees that should the Lessee request additional
space during the term of this lease, (5) Lessor may furnish such as is requested by the Lessee, if
available, adjacent to space covered by this lease . . . ." Section 5(l) empowered the State to
assign any State agency to occupy all or part of the leased space.

 Appellees argue that the State of Texas and Wayne did not enter into a new lease,
which would require compliance with the competitive bidding statute, but instead amended the
1992 Wayne lease to add space for use by the TDHS as expressly authorized by sections 5(a) and
5(l) of the lease. The competitive bidding statute requires competitive bidding when the State
leases space from a private source. (6) The statute, however, does not apply when the State amends
an existing lease. Appellees argue that there was no violation of the competitive bidding statute
and, therefore, no unlawful, overt act.

 Appellees further contend that the acts of adding space to the Wayne lease and
assigning that space to the TDHS were taken pursuant to a legislative mandate to streamline health
and human services by co-locating state health and human services agencies. See Tex. Rev. Civ.
Stat. Ann. art. 4413(505), § 3.08 (West Supp. 1995). Co-location is required by statute if "client
access would be enhanced, the cost of co-location is not greater than the combined operating costs
of the separate offices or facilities of those agencies, and the co-location would improve the
efficiency of the delivery of services." Id. § 3.08(b). Before the lease amendment at issue in the
instant cause, the State had increased its rental space at the Town Plaza Mall for use by the
Commission for the Blind and the Department of Protective and Regulatory Services, which are
both health and human services agencies. See id. § 3.08(c)(4), (11). Appellees' summary-judgment proof established that the TDHS viewed the lease amendment co-locating the TDHS at
the Town Plaza Mall as a means of complying with the co-location statute, thereby enhancing
service to TDHS clients. 

 We hold that appellees conclusively established that no genuine issue of material
fact exists as to an essential element of the Joint Venture's cause of action for civil conspiracy. 
Texas courts have long held that the interpretation of an unambiguous contract is a question of law
that is proper for summary judgment. Myers v. Gulf Coast Minerals Management Corp., 361
S.W.2d 193, 196 (Tex. 1962). If a contract is so worded that it can be given a certain and
definite meaning or interpretation, it is not ambiguous. Alba Tool & Supply Co. v. Industrial
Contractors, Inc., 585 S.W.2d 662, 664 (Tex. 1979). The 1992 Wayne lease is an unambiguous
contract that can be given a definite interpretation: the add-on provision permitted the State to
amend the Wayne lease to include additional space for the TDHS. 

 In a letter to Joe Langston of the TDHS, Wayne wrote that the additional space was
provided "as an add on to the existing lease . . . to be constructed for [the TDHS], adjacent to the
existing lease under the same terms and conditions as the existing lease." This addition clearly
falls within the scope of sections 5(a) and 5(l) of the 1992 Wayne lease. The Joint Venture
asserted at oral argument that because the additional space consists of new construction in the
Town Plaza Mall, it falls outside the scope of the add-on provision. We disagree because such
a restriction appears nowhere in the lease. 

 The co-location statute provides additional support for appellees' argument that
their actions were not illegal but were in fact pursuant to legislative mandate. However,
appellees' argument is not dependent upon the co-location statute. Even assuming no such statute
existed, appellees' actions were lawful because the 1992 Wayne lease provisions clearly enabled
the State to amend the lease to provide additional space to house the TDHS without competitive
bidding.

 The Joint Venture alleged that appellees committed an unlawful, overt act when
they induced GSC officials to break the law by violating the competitive bidding statute. The
Joint Venture made no other allegations of unlawful actions on the part of appellees. Because
there was no violation of the competitive bidding statute, the Joint Venture failed to establish an
essential element of its cause of action for civil conspiracy--an unlawful, overt act. Thus, appellees
were entitled to summary judgment as a matter of law. We overrule the Joint Venture's third
point of error. 

 In its fourth point of error, the Joint Venture complains that the trial court erred
in granting summary judgment relevant to the issues of tortious interference and business
disparagement. Appellees alleged in their motion for summary judgment that the Joint Venture
failed to establish a cause of action for tortious interference with a potential contract and for
business disparagement. The Joint Venture concedes that the cause of action for tortious
interference was raised against Wayne, Pouland, and Donelson, not against appellees. However,
the Joint Venture argues that once civil conspiracy was established, appellees were liable for the
other defendants' actions in tortiously interfering with a prospective contract in furtherance of the
conspiracy. See Akin v. Dahl, 661 S.W.2d 917, 921 (Tex. 1983), cert. denied, 466 U.S. 938
(1984). Because the Joint Venture failed to establish an essential element of its cause of action
for civil conspiracy, the Joint Venture cannot prove appellees' liability for tortious interference. 
In addition, the Joint Venture concedes that no cause of action for business disparagement was
asserted against appellees. Because the Joint Venture had no viable cause of action against
appellees, appellees were entitled to summary judgment as a matter of law. We accordingly
overrule the Joint Venture's fourth point of error.


CONCLUSION


 We hold that appellees' summary-judgment proof established as a matter of law that
no genuine issue of material fact exists as to one or more essential elements of the Joint Venture's
causes of action for civil conspiracy and tortious interference with a prospective contract. It is
therefore unnecessary to address the Joint Venture's first and second points of error relating to
appellees' affirmative defense of official immunity. (7) Having overruled the Joint Venture's third
and fourth points of error, we affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 30, 1995

Do Not Publish
1.   The trial court also granted Pouland and Donelson's and Wayne's motions for
summary judgment, from which Joint Venture appeals. That appeal, which was assigned
Cause No. 03-94-00716-CV, was consolidated with the instant appeal for purposes of oral
argument.
2.   The Joint Venture characterizes the agreement between Wayne and the TDHS as a
new lease while appellees contend that it was in fact a lease amendment to an existing
lease. This issue, which lies at the heart of the dispute, will be addressed in our
discussion.
3.   The Joint Venture claims that appellees sought summary judgment based on a
pleadings defect and that we therefore need not review their summary-judgment evidence
to determine if they proved the nonexistence of a material fact issue as a matter of law. 
The appropriate standard of review of a summary judgment based on a pleadings defect
is de novo, with the reviewing court taking all allegations, facts, and inferences in the
pleadings as true and reviewing them in the light most favorable to the pleader. See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). The Joint Venture accordingly
argues that the only proof that this Court may consider is their unsworn petition and that we
must accept as true all allegations stated therein.


 The standard cited by the Joint Venture applies only when a motion for summary
judgment is based solely upon the plaintiff's petition. Abbott v. City of Kaufmann, 717
S.W.2d 927, 929 (Tex. App.--Tyler 1986, writ dism'd). When the defendant-movant's motion
is supported by summary-judgment proof, summary judgment is appropriate if the
uncontroverted summary-judgment proof conclusively negates one of the essential elements of
the plaintiff's cause of action. Natividad supports this distinction. As in the instant cause, the
defendants in Natividad did not base their motion for summary judgment solely upon the
plaintiff's petition. Their motion for summary judgment was also supported by summary-judgment proof. The court held that it was unnecessary to reach the question of whether the
defendants' summary-judgment proof entitled them to summary judgment because the
plaintiff's pleadings failed to state a viable cause of action. Natividad, 875 S.W.2d at 700.
4.   The Joint Venture challenges the sufficiency of appellees' summary-judgment proof,
arguing that appellees' motion for summary judgment failed to make specific references
to the evidence supporting their motion. Rule 166a(c) provides that "judgment sought
shall be rendered forthwith if (i) the deposition transcripts . . . and other discovery
responses referenced in the motion or response, and (ii) the pleadings, admissions,
affidavits . . . on file at the time of the hearing, or filed thereafter" show that the movant
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Wilson v. Burford, 38
Tex. Sup. Ct. J. 680 (May 25, 1995). The rule contains no requirement that the evidence be
referenced more specifically than being incorporated into the motion, and we refuse to hold
that a motion for summary judgment is defective if it fails to set out the exact evidence on
which it relies.
5.   The primary term of the Wayne lease expires in February 2000.
6.   Section 6.05 is entitled "Leasing Space From Other Sources." Tex. Rev. Civ. Stat.
Ann. art. 601b, § 6.05.
7.   When a defendant-movant moves for summary judgment on the basis of an
affirmative defense, the movant must expressly present and conclusively prove each
essential element of the affirmative defense. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.
1972). Unless the movant conclusively establishes the affirmative defense, the nonmovant
plaintiff has no burden in response to the motion. Gonzales v. City of Harlingen, 814 S.W.2d
109, 112 (Tex. App.--Corpus Christ 1991, writ denied). Governmental employees can assert
the affirmative defense of official immunity from suit only if they establish three elements: (1)
that the suit arises from the performance of discretionary duties; (2) that they acted within the
scope of their authority; and (3) that they acted in good faith. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994). Our review of the evidence indicated the possible
existence of fact issues with regard to the elements of appellees' affirmative defense of official
immunity. Because we resolved the appeal on other grounds, it was unnecessary to further
examine appellees' official immunity defense.